UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                       :
   KENNETH BETTS,                               :
                              Plaintiff,     :
                                         :           15-CV-3836 (JPO)
                     -v-                   :
                                         :       OPINION AND ORDER
   IVAN RODRIQUEZ, et al.,              :
                           Defendants. :
                                         :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

        Plaintiff Kenneth Betts, proceeding *pro se*, filed the initial complaint in this action under

42 U.S.C. § 1983 on May 7, 2015.  (Dkt. No. 2.)  Plaintiff filed the first amended complaint, the

operative complaint in this action, on January 12, 2016, naming as defendants Ivan Rodriquez,

Kelthlyn Frederick, Glenda Wajer, Sergeant Ricardo Morrison, and the City of New York

(collectively, "Defendants").  (Dkt. No. 20 ("Compl").)  Defendants move to dismiss the first

amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 36.)

For the reasons that follow, the motion is granted in part and denied in part.

**I.**      **Background**

        The following facts are taken from the first amended complaint and are assumed true for

the purposes of this motion.

        On December 7, 2012, Plaintiff was approached by two plainclothes police officers who

ordered him to "[p]ut [his] hands up."  (Compl. at 3.)  Plaintiff, not knowing who these

individuals were, attempted to run away, but two additional officers tackled him.  (*Id.*)  The

officers proceeded to pull Plaintiff's arm back while "hitting" his face with their pistols, causing

Plaintiff "excruciating pain."  (*Id.* at 3, 11.)  The officers then handcuffed Plaintiff and walked

him toward a van.  (*Id.* at 11.)  As Plaintiff was entering the van, the officers "slammed [him] to

the ground" and told him to "stop fucking playing." (*Id.*)  The officers then pushed him into a police transport van.  (*Id.*)  According to Plaintiff, the officers—who are three of the individual Defendants here, apparently Rodriquez, Frederick, and Wajer—never identified themselves as police.  (*Id.*)

Upon arriving at the police precinct, Plaintiff was told that he would not receive medical attention until he consented to a strip search.  (*Id.* at 4.)  So he apparently did.  (*Id.*)  During the strip search, an officer began to punch Plaintiff in the stomach and face.  (*Id.*)  Plaintiff was hit around "twenty times in the face," to the point where his lips and "gums were split and bleeding" and his head was covered with welts.  (*Id.*)  The officers then sprayed Plaintiff's face with mace and left him on the ground naked in a cell.  (*Id.*)  Later, Plaintiff was taken to Harlem Hospital, where he was questioned by the police and treated by a nurse.  (*Id.*)  Plaintiff was taken for an x-ray and prescribed pain medication, which he never received.  (*Id.*)

Plaintiff was then taken to a court, where the "captain on duty" (apparently Defendant Morrison) asked what had happened.  (*Id.* at 5.)  The officer escorting Plaintiff explained that Plaintiff "slipped and fell getting into the van," which Plaintiff confirmed, as he had been told by the officer beforehand that "if he has any type of injury, he would be sent back to the precinct where they will have 'FUN' with him." (*Id.*)

Plaintiff was arraigned in New York City Criminal Court early on December 8, 2012. (*Id.*)  Plaintiff's attorney sought and received permission from the court to photograph Plaintiff's injuries.  (*Id.*)  Plaintiff was remanded by the judge and taken to the Manhattan Detention Center ("MDC").  (*Id.*)  At MDC, the medical staff treated Plaintiff; they gave him a sling for his right arm along with pain medication, and they asked why he had not received the medication earlier. (*Id.* at 6.)  Plaintiff was later seen by a specialist, who concluded that he needed additional x-rays and physical therapy.  (*Id.*)  Plaintiff was also seen by a neurologist, who prescribed him

migraine medication; Plaintiff had not experienced migraine headaches prior to the incident with Defendants. (*Id.*)

On October 16, 2013, Plaintiff pleaded guilty to criminal sale of a controlled substance in the third degree, N.Y. Penal § 220.39, in connection with the December 7, 2012, arrest. (Dkt. No. 37-3.) Plaintiff, who is currently incarcerated and proceeding *pro se*, filed suit against Defendants under 42 U.S.C. § 1983, seeking compensatory and punitive damages. (Compl. at 8.) He claims that the individual Defendants violated his constitutional rights, and that the City of New York "actively promoted a policy of unlawful profiling" and "encouraged unwarranted stopping and frisking." (*Id.*)

## II.     Legal Standard

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims." *Cruz v. Midwood Ambulance & Oxygen Serv., Inc.*, 136 F. App'x 414, 415 (2d Cir. 2005) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002)).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all material allegations in the complaint and draws all reasonable inferences in Plaintiff's favor. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

3

To state a claim under Section 1983, a plaintiff must allege that he was deprived of a right guaranteed to him by the Constitution or federal law by a person acting under color of state law. 42 U.S.C. § 1983. Plaintiff does not specify the particular rights whose violation forms the basis for his claim. However, the Court interprets Plaintiff's claims to sound in false arrest, malicious prosecution, excessive force, and deliberate indifference to serious medical needs, in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and New York State law.

### III.    Discussion

Defendants raise several arguments in favor of dismissing Plaintiff's complaint. First, they argue that Plaintiff's claims relating to the legitimacy of his arrest fail as a matter of law due to his state criminal conviction. Next, they argue that Plaintiff fails to state a claim against Defendant Morrison. Third, they argue that Plaintiff fails to state a claim against Defendant City of New York. Finally, they argue that Plaintiff has not stated a claim under New York law. These arguments are addressed in turn.

#### A.     State Criminal Conviction

Defendants argue that Plaintiff's claims relating to the legitimacy of his December 7, 2012, stop and arrest should be dismissed because Plaintiff pleaded guilty to criminal sale of a controlled substance in the third degree, N.Y. Penal Law § 220.39, in connection with the arrest.[1] (Dkt. No. 39 at 12; Dkt. No. 37-2; Dkt. No. 37-3.)

Probable cause is an absolute defense to false arrest and malicious prosecution claims asserted under section 1983. *Thompson v. City of N.Y.*, 592 F. App'x 36, 37 (2d Cir. 2015). And

---

[1]     The Court takes judicial notice of the record Plaintiff's state criminal prosecution, attached as exhibits to Defendants' declaration in support of their motion to dismiss. (Dkt. No. 37.) *See Shmueli v. City of N.Y.*, 424 F.3d 231, 233 (2d Cir. 2005).

4

where a conviction is sustained in connection with an arrest, probable cause is presumed, absent any suggestion that the conviction itself was improperly obtained. *See Cameron v. Fogarty*, 806 F.2d 380, 388–89 (2d Cir. 1986) ("[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause."); *see also Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (prohibiting § 1983 actions whose success would imply the invalidity of a prior conviction, absent evidence the prior conviction was reversed). This presumption applies equally where the conviction is obtained through a guilty plea. *See, e.g.*, *Marshall v. City of N.Y.*, No. 10 Civ. 3137, 2010 WL 4739810, at *2 (S.D.N.Y. Nov. 17, 2010).

Here, Plaintiff was arrested on December 7, 2012, and was charged with one count of criminal possession of a controlled substance in the third degree, N.Y. Penal Law § 220.16, one count of criminal sale of a controlled substance in the third degree, *id.* § 220.39, and two counts of assault in the second degree, *id.* § 120.05. (Dkt. No. 37-2.) On October 16, 2013, he pleaded guilty to criminal sale of a controlled substance in the third degree in New York Supreme Court, New York County. (Dkt. No. 37-3.) This conviction resulting from Plaintiff's arrest serves as a defense against the claim that the arrest was made without probable cause, and in turn precludes Plaintiff's Section 1983 claims based on the legitimacy of his arrest. To the extent Plaintiff's complaint is interpreted to raise these claims, Defendants' motion to dismiss is granted.

Defendants also make a related argument that Plaintiff is collaterally estopped from relitigating factual issues necessarily decided by Plaintiff's acceptance of a guilty plea during the prior criminal proceeding, and as such his claims relating to the arrest must be dismissed. (Dkt. No. at 17-19.) "The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties

or their privies." *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotations omitted) (quoting *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 718-19 (2d Cir. 1993)). "Under New York law, because a criminal conviction is considered a valid final judgment for purposes of issue preclusion, it bars relitigation of all of the factual issues upon which that conviction was based." *Colliton v. Donnelly*, 399 F. App'x 619, 620 (2d Cir. 2010) (citing *Singleton v. City of N.Y.*, 632 F.2d 185, 205 (2d Cir. 1980)). Defendants are correct, then, that to the extent that the issues underlying Plaintiff's arrest-related 1983 claims were necessarily decided by his guilty plea—such as the issue of probable cause to arrest—he is precluded from relitigating them here. However, while the Court dismisses Plaintiff's arrest-related claims based on his conviction, this ground for dismissal has no effect on his claims for excessive force and deliberate indifference, which arise from conduct occurring after Plaintiff's arrest.

### B.   Claims Against Defendant Morrison

In the amended complaint, Plaintiff names four individual Defendants—Ivan Rodriquez, Kelthlyn Frederick, Glenda Wajer, and Sergeant Ricardo Morrison—and the City of New York. (Compl. at 1.) Defendants argue that Plaintiff has not stated an actionable claim against Defendant Morrison (but does not argue the same with respect to the other named individuals). (Dkt. No. 39 at 19.)

Plaintiff does not identify the individual Defendants by name in his narrative description of the incidents giving rise to his claim. However, Defendants assert that Plaintiff's interaction with Defendant Morrison was only "a brief encounter at Manhattan Central Booking after plaintiff was arrested." (*Id.*) This description corresponds to Plaintiff's description in his amended complaint of "the captain on duty" at "the Court building." (Compl. at 5.) The entirety of Plaintiff's description of this encounter is brief: "When he w[e]nt to the Court building, the captain on duty asked exactly [what] happened to [] him. The police officer that brought him in

6

told the captain, that 'he slipped and fell getting into the van.' The captain looked at plaintiff's face [and] asked him, [']was he sure this is what happened?' and he said: Yes . . . . Plaintiff told the Captain that he slipped and fell getting to the van out of fear for his safety and well being." (*Id.*) Plaintiff also claims that at the time of his encounter with Morrison, "his body was in extreme pain" and that his physical injuries were so visibly severe that his attorney later took pictures of his head, mouth, shoulder, arm, wrists, and torso. (*Id.*)

Construing Plaintiff's claim liberally, the Court interprets Plaintiff's claim against Defendant Morrison as one for deliberate indifference to serious medical needs under the Fourteenth Amendment to the United States Constitution.[2]

In order to succeed on a deliberate indifference claim, a 1983 plaintiff must plead two elements. "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is objectively serious demands two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic

---

[2]       Plaintiff's claim is based on the Fourteenth Amendment as it arises in the context of pretrial detainment, rather than in the context of incarceration, in which case it would be based on the Eighth Amendment. *See Nielsen v. Rabin*, 746 F.3d 58, 63 n.3 (2d Cir. 2014). "However, this distinction is not material because '[c]laims for deliberate indifference . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.'" *Id.* (quoting *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009)).

and substantial pain.'" *Id.* (alteration in original) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement . . . is subjective: the charged official must act with a sufficiently culpable state of mind." *Id.* "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* Such "awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Farmer*, 511 U.S. at 842).

Construing all inferences in Plaintiff's favor, as the Court must at this stage, *see Caplaw Enters.*, 448 F.3d at 521, the Court concludes that Plaintiff has adequately made out a claim of deliberate indifference against Defendant Morrison.  On the objective prong, Plaintiff adequately alleges that his need for medical care was sufficiently serious and that his care was not adequate. He claims that his injuries were visually apparent; in fact, his attorney was moved to photograph them.  (Compl. at 5.)  This occurred after Plaintiff had been held for four hours before appearing before a judge or receiving additional medical treatment.  (*Id.*)  He also notes that, when he was treated by medical staff at MDC, "they immediately gave him[] pain medication [and] asked him why he was not given" medication earlier.  (*Id.*)  He further claims that his body "was in extreme pain" (*id.*), and that as a result of the incident he "sustained serious and prolonged injuries" and "has developed a severe deficit in his right arm" that "is so severe that he virtually is a person with one arm" (*id.* at 3).  As a result of his injuries, Plaintiff can no longer write with his right hand and has had to learn to write with his left hand.  (*Id.* at 3.)  Plaintiff has adequately alleged that at the time of his encounter with Defendant Morrison, the deprivation of medical care for his condition was sufficiently serious and that adequate care was not provided.

As for the subjective prong of the deliberate indifference analysis, Plaintiff pleads facts sufficient to suggest that Defendant Morrison was aware of and consciously disregarded his

serious medical condition.  *See Nielsen*, 746 F.3d at 63 ("[T]he official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." (quoting *Salahuddin,* 467 F.3d at 280)).  Defendants argue that "plaintiff does not aver any facts showing that defendant Morrison was aware that plaintiff had a sufficiently serious medical condition."  (Dkt. No. 39 at 21.)  But the severity of Plaintiff's apparently visible injuries belie this claim.  Indeed, Defendant Morrison himself "looked at plaintiff's face [and] asked him" what had happened, reacting to Plaintiff's clear injuries.  (Compl. at 5.)  *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) ("Evidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (quoting *Farmer,* 511 U.S. at 842)).  While further development of the facts of this case may reveal more details about the nature of Plaintiff's injuries and his interactions with Defendant Morrison, at this stage, construing inferences in Plaintiff's favor and reading his complaint liberally, the Court declines to dismiss the claims against Defendant Morrison.

### C.    Municipal Liability

Defendants next argue that Plaintiff's claim for municipal liability against Defendant City of New York must fail.  (Dkt. No. 39 at 22.)

"It is axiomatic that municipalities cannot be held liable pursuant to § 1983 on a respondeat superior theory."  *Betts v. Shearman*, No. 12 Civ. 3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "[T]o hold a city liable under 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of N.Y.* 490 F.3d 189, 195 (2d Cir. 2009) (quotations and citation omitted).  "In order to allege such a policy or

custom, a plaintiff may assert one of the following: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Guzman v. United States*, No. 11 Civ. 5834, 2013 WL 5018553, at *3–4 (S.D.N.Y. Sept. 13, 2013) (quoting *Saenz v. Lucas*, No. 07 Civ. 10534, 2008 WL 2735867, at *5 (S.D.N.Y. July 9, 2008)).

Here Plaintiff fails to plausibly allege municipal liability.  His sole allegation in the complaint germane to a *Monell* claim is that "Defendant City of New York actively promoted a Policy of unlawful profiling of blacks and other minority men and allowed and encouraged unwarranted stopping and frisking."  (Compl. at 8.)  This conclusory allegation alone is insufficient for Plaintiff to allege a municipal policy predicate to *Monell* liability.  *See, e.g.*, *Bishop v. City of N.Y.*, No. 13 Civ. 9203, 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016) (finding that a plaintiff alleged a policy sufficient to support a stop-and-frisk *Monell* claim where the complaint included statistics, and reports of whistleblowers, and a reference to *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013), which includes analysis of internal police documents and records of millions of stops).  Moreover, for reasons discussed above, Plaintiff has not sufficiently connected this alleged policy to his alleged deprivation of constitutional rights.  In his opposition to the motion to dismiss, Plaintiff elaborates that he was "profiled and beaten as direct consequences of the unconstitutional policies promoted by the city of New York and its Administration," focusing on the absence of probable cause for his stop. (Dkt. No. 48 ¶ 7.)  But the Court dismisses Plaintiff's claims to the extent they relate to the

lawfulness of his stop or arrest.  And Plaintiff has not plausibly alleged how the City of New

York's policy of stop and frisk is causally connected to his remaining constitutional claims,

namely, excessive force and deliberate indifference.  *See Reynolds v. Giuliani*, 506 F.3d 183, 193

(2d Cir. 2007) (requiring a plaintiff to show that a municipal policy "actually caused or was the

moving force behind the alleged violations").  As such, Plaintiff's claim against the City of New

York must be dismissed.

### D.    State Law Claims

Finally, Defendants argue that to the extent Plaintiff's claim is construed to include any

New York State law claims, such claims are barred due to Plaintiff's failure to comply with New

York statutory notice and timing requirements.  (Dkt. No. 39 at 24.)

New York General Municipal Law provides that "[n]o Action . . . shall be prosecuted or

maintained against a city . . . or of any officer, agent or employee thereof . . . unless . . . a notice

of claim shall have been made and served upon the city."  N.Y. GML § 50–i(1).  It further

provides that such action "shall be commenced within one year and ninety days after the

happening of the event upon which the claim is based."  *Id.*

Here Plaintiff has not alleged that he served notice upon the city, nor has he commenced

his action within the appropriate time frame.  Plaintiff was arrested on December 7, 2012, and

the incidents described in his complaint take place on that day and those immediately following.

(Dkt. No. 37.)  However, he did not initiate this action until May 7, 2015, over two years from

the initial incident.  (Dkt. No. 1.)  Plaintiff's delay requires that his claims sounding in New York

law be dismissed.  *See, e.g.*, *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 428

(S.D.N.Y. 2002).

IV.     **Conclusion**

Defendants' motion to dismiss is denied as to Plaintiff's claims for excessive force and deliberate indifference against the individual Defendants, and granted as to Plaintiff's claims relating to the legitimacy of his arrest, against Defendant City of New York, and under New York State Law.

For the foregoing reasons, the motion is GRANTED IN PART and DENIED IN PART. The Clerk of Court is directed to close the motion at Docket Number 36.


        SO ORDERED.

Dated:  December 12, 2016
        New York, New York

                                        _____
                                               J. PAUL OETKEN
                                        United States District Judge


COPY MAILED TO *PRO SE* PARTY BY CHAMBERS.