UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

KENNETH BETTS,

                                           Plaintiff,

-against-

DETECTIVE IVAN RODRIGUEZ; DETECTIVE KEITHLYN FREDERICK; DETECTIVE GLENDA WAJER; AND SERGEANT RICARDO MORRISON,

                                             Defendants.

------------------------------------------------------------------------ X

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

15-CV-3836 (JPO)(BCM)

       Defendants Detective Rodriguez, Detective Frederick, Detective Wajer, and Sergeant Morrison submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York to set forth the material facts as to which defendants contend there are no genuine issues to be tried.[1]

       1.    On January 12, 2016, plaintiff Kenneth Betts filed the Amended Complaint pursuant to 42 U.S.C § 1983, alleging that his constitutional rights were violated during his arrest on December 7, 2012. See Amended Complaint, annexed to Declaration of Alexander Noble, dated January 13, 2017 (hereinafter "Noble Decl.) as Exhibit "A."[2]

---

[1] Defendants adopt the facts set forth herein only for purposes of the Motion for Summary Judgment and reserve the right to present different and/or conflicting facts at any trial in this matter. See Vasconcellos v. City of New York, 12 Civ. 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015) (Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering any prejudice – the 'admission' ... neither binds the party going forward if the motion is denied nor can it be admitted in evidence at trial.").

[2] For ease of reference, citations to plaintiff's Amended Complaint utilize the page numbers that appear on the bottom of the document. Plaintiff's Amended Complaint was electronically filed on the docket with certain pages out of sequence. Defendants' have re-arranged the pages of plaintiff's Amended Complaint in Exhibit A to conform to the original correct page sequence.

2. Plaintiff named the City of New York, Detective Rodriguez, Detective Frederick, Detective Wajer, and Sergeant Morrison as defendants in the caption and "Parties" section of the Amended Complaint. See Exhibit A, pp. 1-2.

3. In the Amended Complaint, plaintiff generically refers to actions allegedly taken by "the defendants" or "defendant" during the alleged December 7, 2012 incident. The Amended Complaint does not provide any specification of who and how, if at all, each individual defendant was personally involved in the alleged incident. See generally, Exhibit A. The names of defendants Detective Rodriguez, Detective Frederick, Detective Wajer, and Sergeant Morrison do not appear anywhere in the "Fact" section of plaintiff's Amended Complaint. See generally, id.

4. On March 22, 2016, defendants moved to dismiss plaintiff's Amended Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. See Dkt. Nos. 36-39. The Court interpreted plaintiff's Amended Complaint to allege claims of false arrest, malicious prosecution, excessive force, and deliberate indifference to serious medical needs, in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and New York State Law. See Court's December 12, 2016 Opinion and Order, annexed to Declaration of Alexander Noble, dated January 13, 2017 (hereinafter "Noble Decl.) as Exhibit "B," p. 4. The Court additionally interpreted the Amended Complaint to state a claim for municipal liability under § 1983 against defendant City of New York. Id., pp. 9-11.

5. By Opinion and Order dated December 12, 2016, the Court granted defendants' motion to dismiss plaintiff's claims of false arrest, malicious prosecution, municipal liability, and all claims arising under New York State law. Id., p. 12. The Court denied

defendants' motion to dismiss plaintiff's claims of excessive force and deliberate indifference to serious medical needs against the individual defendants. Id.

6. On October 3, 2016, plaintiff testified at deposition regarding the events surrounding his December 7, 2012 arrest for criminal sale of a controlled substance. See Excerpts of Plaintiff's Deposition Transcript, annexed to Noble Decl. as Exhibit "C."

7. On December 6, 2012, the evening before his arrest, plaintiff hid approximately 50 bags of crack-cocaine in a garbage can outside of his apartment building at 250 West 131st Street in New York, New York. See Exhibit C, pp. 29:14-30:12; 33:22-34:06.

8. At approximately 7:00 a.m. on December 7, 2012, plaintiff retrieved the 50 bags of crack-cocaine from the garbage can in order to sell them. See Exhibit C, p. 34:02-12.

9. Over the next hour, plaintiff sold about forty bags of crack-cocaine, leaving him with approximately 8-10 bags on his person at the time of arrest. See Exhibit C, p. 34:13-17.

10. At approximately 2:00 p.m. on December 7, 2012, plaintiff sold a quantity of a controlled substance, for which plaintiff was subsequently convicted upon guilty plea on November 20, 2013. See Exhibit B, p. 6.[3]

11. Plaintiff alleges in the Amended Complaint that, while waiting outside Saint Nicholas Apartment Building on West 127th Street in New York, New York, he was approached by two individuals and told to put his hands up. See Exhibit A, p. 3. Plaintiff further

---

[3] The Court, by Opinion and Order December 12, 2016, determined that plaintiff is collaterally estopped from denying that he sold crack-cocaine to an undercover police officer because plaintiff pled guilty to the arrest charge of criminal sale of a controlled substance in the third degree. See also Defendants' Memorandum of Law in Support of Motion to Dismiss the Amended Complaint, Dkt. No. 39, pp. 17.

alleged that when these individuals approached him, they did not identify themselves as police officers. Id.

12. Plaintiff fled from the two unknown individuals, and was allegedly tackled by two other individuals while he was fleeing. Id. Plaintiff testified at his deposition that he could not see any of the individuals' faces who tackled him. See Exhibit C, p 38:06-12. Plaintiff further testified at deposition that he did not see the unidentified individuals who grabbed him as he was fleeing. See Exhibit C, pp. 38:13-21, 40:17-40:21. Once plaintiff began fleeing, he "never looked back," and "didn't try to see who it was that grabbed [him]." See Exhibit, p. 41:02-11.

13. Plaintiff alleges in the Amended Complaint that he was pinned to the ground after being tackled by two individuals, and two more men approached and were pulling on his arm while hitting plaintiff's face with their pistols. See Exhibit A, p. 3. Plaintiff did not learn the identity of any of the individuals who allegedly pursued and assaulted him; nor could he see their faces. See Exhibit C, pp. 36:25-37:08, p. 38:06-21.

14. Plaintiff testified at deposition that he does not know what any of the individual defendants Detective Rodriguez, Detective Frederick, Detective Wajer, or Sergeant Morrison look like. See Exhibit C, p. 39:16-24. Plaintiff testified at deposition that he sued the defendants because their names appeared in arrest paperwork that was prepared at the precinct following plaintiff's arrest. See Exhibit C, pp. 40:03-07.

15. At the scene of arrest, plaintiff was placed in a prisoner van, where he claims he was further assaulted by unspecified police officers. See Exhibit C, p. 43:14-24.

16. Plaintiff testified at deposition that additional crack-cocaine belonging to plaintiff was found in the prisoner van. See Exhibit C, p. 58:05-09.

17. When plaintiff arrived at the precinct, plaintiff had a sandwich bag filled with crack-cocaine hidden under his genitals. See Exhibit C, p. 58:10-20. Plaintiff testified at deposition that he still had the crack-cocaine hidden in his pants when he arrived at the precinct because officers couldn't strip search him at the scene. See Exhibit C, p. 58:10-16.

18. At the precinct, an officer informed plaintiff that he needed to be strip searched before he could be further transported. See Exhibit C, pp. 56:24-57:04. While plaintiff was being strip searched, the bag of crack-cocaine hidden under plaintiff's genitals fell to the floor. See Exhibit C, p. 64:14-17.

19. Plaintiff alleges that, while he was being strip searched, he was assaulted by officers. See Exhibit C, pp. 65:14-67:12, 69:05-13; and Exhibit A, p. 3B. After plaintiff was strip searched, plaintiff dressed himself and was transported by paramedics to Harlem Hospital. See Exhibit C, pp. 69:24-70:05.

20. At approximately 4:35 p.m., plaintiff was admitted to Harlem Hospital. See Harlem Hospital Records, annexed to Noble Decl. as Exhibit "D," p. D260.[4] Plaintiff complained of pain to both his shoulders, forehead, and elbow, and denied, among other things, cuts or bleeding from same. Id., p. D251; Exhibit C, p. 71:07-12.

21. Plaintiff alleged in the Amended Complaint that "his lips and gums were split and bleeding" following his arrest. Exhibit A, p. 3B. Plaintiff's Harlem Hospital records indicate that he did not have any cuts or bleeding following his arrest, nor did he complaint of any. See Exhibit D, p. D251.

22. Plaintiff underwent X-Ray examinations at Harlem Hospital. See Exhibit C, p. 75:03-07; Exhibit D, pp. 241-D246. Based on the results of the X-Ray examinations,

---

[4] For ease of reference, citations to the Harlem Hospital Records, produced to plaintiff during discovery, utilize the Bates Stamp numbers that appear thereon.

Harlem Hospital personnel determined that plaintiff did not suffer any fracture or dislocation in his shoulders, arms, or elbows. See Exhibit D pp. D241-D246. Plaintiff was diagnosed with "bumps and swelling/bruises" to his forehead. Id., p. D251-D252.

23. Plaintiff testified at deposition that he was not diagnosed with any injuries at Harlem Hospital, other than a birth defect in his shoulder. See Exhibit C, pp. 75:25-76:16; Exhibit D, p. D251-D252.

24. Plaintiff alleged in the Amended Complaint that he was prescribed pain medication at Harlem Hospital but never received it because he was taken to the Court building and that he was told by a doctor to come back for follow up appointments, but was not allowed due to his incarceration. See Exhibit A, p. 3B-3C. Plaintiff testified at deposition that a doctor administered pain medication to plaintiff at Harlem Hospital. See Exhibit C, p. 75:03-06.

25. Plaintiff was transported from Harlem Hospital to the precinct. See Exhibit C, pp. 78:09-78:11. Plaintiff testified at deposition that he did not experience any pain when he returned to the precinct due to the pain medication he was administered. See Exhibit C, pp. 78:24-79:03.

26. Plaintiff was transported from the precinct to Manhattan Detention Complex, or "the Tombs," in order to await arraignment. See Exhibit C, p. 78:12-20. In the Amended Complaint, plaintiff alleged that he encountered a "Captain" during his intake to Manhattan Detention Complex. See Exhibit A, p. 3C. At deposition, plaintiff clarified that the "Captain" referred to defendant Sergeant Morrison, a desk sergeant presiding over the intake of arrestees at Manhattan Detention Complex. See Exhibit C, p. 81:02-06.

27. Sergeant Morrison asked plaintiff how plaintiff sustained his apparent injuries. See Exhibit C, pp. 80:11-81:18, and plaintiff informed Sergeant Morrison that he

"slipped and fell getting into the van." 80:15-20. Plaintiff does not allege that he made any request for medical treatment to Sergeant Morrison. See generally, Exhibit A; Exhibit C, p 81:22-25. Plaintiff further alleges that Sergeant Morrison did not know that plaintiff had been assaulted. See Exhibit A, p. 3C.

28. Plaintiff was transferred into the custody of the New York City Department of Correction had no further contact with any members of the New York City Police Department after he was admitted to Manhattan Detention Complex. See Exhibit C, p. 82:17-21.

29. Following plaintiff's admission into Department of Correction custody, plaintiff fell asleep for two hours. See Exhibit C, p. 82:05-07. After two hours, plaintiff woke up and complained that his pain had returned. See Exhibit C, p. 82:01-10. Plaintiff received Tylenol at Manhattan Detention Center. See Exhibit C, pp. 87:24-88:05.

Dated: New York, New York
January 13, 2017

ZACHARY W. CARTER
Corporation Counsel for the
 City of New York
*Attorney for Defendants Rodriguez, Frederick, Wajer, and Morrison*
100 Church Street, Room 3-310
New York, New York 10007
(212) 356-2357

By: */s/ Alexander Noble*
Alexander Noble
Assistant Corporation Counsel
Special Federal Litigation Division

**BY FIRST CLASS MAIL**
TO: Kenneth Betts
14-R-0087
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411