UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH BETTS,
Plaintiff,

-v-

IVAN RODRIQUEZ, *et al.*,
Defendants.

15-CV-3836 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Kenneth Betts, proceeding *pro se*, filed the initial complaint in this action under 42 U.S.C. § 1983 on May 7, 2015. (Dkt. No. 2.) Betts filed the first amended complaint, the operative complaint in this action, on January 12, 2016, naming as defendants Ivan Rodriquez, Kelthlyn Frederick, Glenda Wajer, Sergeant Ricardo Morrison, and the City of New York (collectively, "Defendants"). (Dkt. No. 20 ("Compl").) In an Opinion and Order dated December 12, 2016, the Court granted in part and denied in part Defendants' motion to dismiss. (Dkt. No. 75.) Defendants now move for summary judgment on Betts' remaining claims. (Dkt. No. 78.) For the reasons that follow, the motion is granted in part and denied in part.

## I. Legal Standard

"A document filed *pro se* is 'to be liberally construed' . . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims." *Cruz v. Midwood Ambulance & Oxygen Serv., Inc.*, 136 F. App'x 414, 415 (2d Cir. 2005) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002)).

A party is entitled to summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A

fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

At the summary judgment stage, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). In deciding a motion for summary judgment, courts view the evidence "in the light most favorable to the nonmoving party" and grant summary judgment only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).

## II. Discussion

Familiarity with this dispute is presumed, and the facts of the case are detailed in the Court's prior Opinion and Order at the motion-to-dismiss stage. *See Betts v. Rodriquez*, No. 15 Civ. 3836, 2016 WL 7192088 (S.D.N.Y. Dec. 12, 2016).

In considering this motion, the Court relies on facts that are undisputed, and where facts are disputed and supported by evidence, takes those facts in the light most favorable to Betts.[1]

[1] In response to Defendants' motion for summary judgment, Betts submitted a brief in opposition (Dkt. No. 88), and a statement of disputed factual issues, which attaches several exhibits (Dkt. No. 89). Defendants argue that the Court should disregard Betts' opposition due

At this stage, the only claims remaining are Betts' claims for excessive force and for deliberate indifference to serious medical needs.

Defendants argue that they are entitled to summary judgment on the deliberate indifference claim due to Betts' failure to show that he was denied adequate medical care. (Dkt. No. 79 at 10.) Defendants also argue that they are entitled to summary judgment on the excessive force claim because Betts has not adequately alleged Defendants' personal involvement. (*Id.* at 7.) The Court will address these issues in turn.

**A. Deliberate Indifference**

As the Court explained at the motion-to-dismiss stage:

> In order to succeed on a deliberate indifference claim, a 1983 plaintiff must plead two elements. "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is objectively serious demands two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or

---

to his failure to comply with the Court's local rules, even after Defendants served Betts with notice of the applicable rules. (Dkt. No. 93 at 1-4.)

While *pro se* litigants are "not excused from meeting the requirements of Local Rule 56.1," the Court nonetheless "retains some discretion to consider the substance of the [*pro se* party's] arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."). Though Betts' factual statement does not directly correspond to Defendants' 56.1 statement, and though it is not supported by citations to evidence, because he is proceeding *pro se*, "this Court has conducted 'an assiduous review of the record' to determine if there is any evidentiary support for his assertions of fact that do not cite to evidence and to determine if there are any other material issues of fact." *Geldzahler v. N.Y. Med. Coll.*, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010) (quoting *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)); *see also, e.g.*, *Anderson v. City of New Rochelle*, No. 10 Civ. 4941, 2012 WL 3957742, at *7 (S.D.N.Y. Sept. 4, 2012). The Court will also "consider the unsworn statements in his 56.1 Response on the assumption that he would have testified to these statements in his Declaration." *Geldzahler*, 746 F. Supp. 2d at 620 n.1.

> patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (alteration in original) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).
>
> "The second requirement . . . is subjective: the charged official must act with a sufficiently culpable state of mind." *Id.* "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* Such "awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Farmer*, 511 U.S. at 842).

*Betts*, 2016 WL 7192088, at *4.

In allowing the deliberate indifference claim to survive Defendants' motion to dismiss, the Court focused on the actions of Defendant Morrison during his encounter with Betts at Manhattan Central Booking. *Id.* However, in his opposition to Defendants' motion for summary judgment, Betts nowhere mentions his claim for deliberate indifference or discusses the incidents that occurred at Central Booking. (Dkt. Nos. 88, 89.) Betts focuses only on the excessive force claim and the facts surrounding his initial arrest. (*Id.*)

Betts' failure to address the circumstances surrounding his deliberate indifference claim is alone sufficient to justify summary judgment for Defendants on this claim. *See, e.g.*, *Turner v. Sidorowicz*, No. 12 Civ. 7048, 2016 WL 3938344, at *4 (S.D.N.Y. July 18, 2016) ("[B]ecause Plaintiff does not address this claim in either his memorandum or affidavits and exhibits submitted in opposition to Defendants' motion for summary judgment, the Court deems him to have abandoned this claim. This result is warranted regardless of Plaintiff's *pro se* status . . . ." (citations omitted)).

In any event, Defendants are entitled to summary judgment on the merits of the deliberate indifference claim. Defendants adduce evidence in the form of medical records from Harlem Hospital that show that Betts' injuries were not sufficiently severe as to satisfy the objective

prong of the deliberate indifference standard. *See Salahuddin*, 467 F.3d at 279-80. Those records show that, though Plaintiff claims that his lips and gums were bleeding following his arrest, his medical records indicate no cuts or bleeding. (Dkt. No. 80 ¶ 21.) Moreover, though Betts had claimed that he suffered serious injuries to his right arm and shoulder, x-rays showed no fracture or dislocation to his shoulder, arm, or elbow. (*Id.* ¶ 22.) Further, one of Betts' chief complaints related to the delay in providing him with pain medication until he was treated at MDC. However, he testified in a deposition that he received pain medication much earlier, while he was at Harlem Hospital before he was transported to the police precinct. (*Id.* ¶ 24.) These injuries are not sufficiently serious for the purposes of deliberate indifference. *See Vargas v. City of N.Y.*, No. 13 Civ. 3188, 2017 WL 1214434, at *11 (E.D.N.Y. Mar. 31, 2017) ("To establish a 'serious medical condition' under the . . . 'objective prong,' the plaintiff [i]s required to establish 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'") (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990)).

As the Court predicted at the motion-to-dismiss stage, factual development has "reveal[ed] more details about the nature of Plaintiff's injuries." *Betts*, 2016 WL 7192088, at *5. And these details—along with Betts' failure to contest them or put forward an alternative version of events—are insufficient to support a claim for deliberate indifference.

**B. Excessive Force**

Defendants argue that they are entitled to summary judgment on Betts' excessive force claim due to Betts' failure to adequately allege the personal involvement of each Defendant in the use of excessive force against him. (Dkt. No. 79 at 9-10.) The also argue—for the first time in their reply brief—that even assuming Defendants' personal involvement, they are nonetheless entitled to qualified immunity. (Dkt. No. 93 at 9-11.)

"In order to maintain an action . . . under . . . section 1983, a plaintiff must establish specific facts demonstrating that defendant's personal involvement in the constitutional violations alleged." *Dockery v. Tucker*, No. 97 Civ. 3584, 2006 WL 5893295, at *13 (E.D.N.Y. Sept. 6, 2006) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). Such personal involvement may be demonstrated by "proof of the defendant's direct participation in the alleged violation." *Id.* "A plaintiff seeking to prove that an officer directly participated in the alleged excessive force need not be able to positively identify, at trial, which defendant took what particular action." *Gonzalez v. Waterbury Police Dep't*, 199 F. Supp. 3d 616, 621 (D. Conn. 2016). "Rather, a jury may use a combination of factors—direct testimony, cross examination, and circumstantial evidence—to infer that a particular defendant took a particular action." *Id.*; *see also Medina v. Donaldson*, No. 10 Civ. 5922, 2014 WL 1010951, at *7 (E.D.N.Y. Mar. 14, 2014) ("Absent direct evidence, a jury may still find for the plaintiff on a theory of direct participation if 'there is sufficient circumstantial evidence from which the trier of fact could make reasonable conclusions concerning who, if anyone, struck [the plaintiff].'") (alteration in original) (quoting *Lasher v. City of Schenectady*, No. 02 Civ. 1395, 2004 WL 1732006, at *6–7 (N.D.N.Y. Aug. 3, 2004)); *id.* (collecting cases). At the summary judgment stage, the question is whether, viewing the evidence in the light most favorable to the non-moving party, a reasonable juror could find direct participation. *Dockery*, 2006 WL 5893295, at *13 (citing *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)).

Defendants marshal several facts to support their argument that Plaintiff cannot connect them to the allegedly offending acts. The amended complaint does not specify which Defendant took which specific action; it merely speaks of Defendants in the aggregate. (Dkt. No. 80 ¶ 3.) Moreover, in his deposition testimony, Betts testified that he does not know what the individual Defendants look like, that he did not get a good look at them at the time of the incident, and that

he was only able to name them as Defendants based on paperwork prepared following his arrest. (*Id.* ¶¶ 12-14.)

But in his Declaration in Opposition to Defendants' Motion for Summary Judgment, Betts is able to specifically describe the role of each Defendant:

> [T]he heavyset Latino person (Rodriquez) had [h]is arms around my body and would not let go. The slender and light-skinned person (Detective Wajer) was hitting me and the black person Keithlyn Frederick was twisting my arm and trying to handc[]uff me. He was twisting it as hard as he could until i[t] finally popped of[f] the socket and the pain was excruciating . . . .

(Dkt. No. 87 ¶ 5.) And in his Statement of Disputed Factual Issues, filed in opposition to the motion for summary judgment, Betts asserts that it is, in fact, disputed whether he was "cognizant enough to recognize" the Defendants who used physical force in connection with his arrest as Defendants Rodriquez, Frederick, and Wajer.[2] (Dkt. No. 89 ¶¶ 3-5.) Moreover, Betts attaches to that Statement three documents that appear to be review board interview notes describing the involvement of each of those three Defendants in connection with Betts' arrest. (*Id.* Exs. A, B, C.)

In the face of these representations, Defendants argue that, in light of Betts' earlier deposition testimony, his submissions on summary judgment are insufficient to create a genuine dispute of material fact for trial. (Dkt. No 93 at 7.) *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000). However, Defendants' reliance on the so-called "sham affidavit" principle—that a party who has been examined on deposition cannot raise an issue of fact by submitting a contradictory affidavit—is misplaced where the affidavit in question is corroborated

[2] Betts makes no specific reference to Defendant Morrison in connection with his excessive force claim, beyond naming him in the list of Defendants at the beginning of his declaration. (Dkt. No. 87 ¶ 1.) Morrison, it seems, had no role in Betts' apprehension and arrest—and the claim of excessive force arising from that interaction. Accordingly, summary judgment is granted as to Defendant Morrison on that claim.

by other evidence. *See Buie v. City of N.Y.*, No. 12 Civ. 4390, 2015 WL 6620230, at *3 (E.D.N.Y. Oct. 30, 2015) (citing *Palazzo*, 232 F.3d at 43). This is especially so in light of the special solicitude due to *pro se* parties. *See Erickson*, 551 U.S. at 94.

Here, the detailed descriptions of each Defendant's role in the alleged violation laid out in Betts' submission is corroborated by the CCRB interview notes. Considering together Betts' filings (including the corroborating evidence), Betts' *pro se* status, and the Court's obligation at this stage to viewing the evidence in the light most favorable to Betts, the Court concludes—even despite Betts' deposition testimony—that a reasonable jury could find direct participation by each defendant in the alleged violation. This is sufficient to defeat summary judgment.

Defendants further argue that, even assuming their personal involvement, they are nonetheless entitled to qualified immunity. (Dkt. No. 93 at 9-11.)

"It is well established that qualified immunity may operate as a defense to excessive force claims." *Mesa v. City of New York*, No. 09 Civ. 10464, 2013 WL 31002 (S.D.N.Y. Jan. 3, 2013). "In the excessive force context, 'the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances.'" *Read v. Town of Suffern Police Dep't*, No. 10 Civ. 9042, 2013 WL 3193413, at *7 (S.D.N.Y. June 25, 2013) (internal quotation marks omitted) (quoting *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995)). In analyzing the reasonableness of force used in connection with an arrest, courts consider three factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight." *Id.* "If a genuine issue of material fact exists regarding the reasonableness of the officers' conduct, summary judgment must be denied." *Read*, 2013 WL 3193413, at *4 (citing *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 516 (2d Cir. 1994)).

Defendants claim that their use of force was reasonable under the circumstances because "no force was used against plaintiff until plaintiff attempted to punch defendant Rodriguez in the face and flee in order to evade arrest," and because Betts "was constantly kicking and punching, resisting attempts to place his arms in handcuffs." (Dkt. No. 93 at 10.) As such, Defendants claim they only used force that was "reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer[s]." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).

Though "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, . . . it does not give the officer license to use force without limit." *Id.* at 165-66. And Betts' submissions tell a different story—one in which Defendants' use of force was not reasonably calibrated to the nature of the threat. First, Betts claims that Defendants initiated the incident with the use of force when he was "aggressively approached and attac[k]ed by the Defendants . . . without them having identified themselves as officers of the law." (Dkt. No. 87 ¶ 4.) Betts' submissions suggest, contrary to Defendants' claim, that Defendants used force *before* Betts attempted to flee. Second, Betts does not claim that he physically resisted arrest in the way Defendants describe. While Betts acknowledges that he attempted to flee ("because of the Fear of being killed by [Defendants]"), he disputes aggressively resisting Defendants. (*Id.*) And third, even if Betts did resist Defendants, the extent of force used may have been objectively unreasonable under the circumstances as Betts describes them. For example, Betts contends that

Defendants "hit him numerous times on various parts of his body; while simultaneously . . . twisting his right arm until it popped out of the socket." (Dkt. No. 88 at 2.)

If a jury finds the facts to be as Betts describes them, it could reasonably conclude that the officers' actions were objectively unreasonable under the circumstances. Alternately, if the jury finds the facts to be as Defendants describe, they are likely to succeed. *See Weather v. City of Mount Vernon*, No. 08 Civ. 192, 2011 WL 1046165, at *9 (S.D.N.Y. Mar. 22, 2011) ("In excessive force cases the qualified immunity and Fourth Amendment analyses often 'converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful.'" (quoting *Cowan v. Breen*, 352 F.3d 756, 764, n.7 (2d Cir. 2003)), *aff'd*, 474 F. App'x 821 (2d Cir. 2012). Thus, given these conflicting narratives of what happened and when, there are genuine issues of fact that preclude the Court from granting summary judgment for Defendants on this claim. *See Cowan*, 352 F.3d at 764 ("Because in this case genuine, material, factual disputes overlap both the excessive force and qualified immunity issues, summary judgment must be denied."). The question of what really happened is one for the jury.

## III. Conclusion

For the foregoing reasons, the motion is GRANTED IN PART and DENIED IN PART. Defendants' motion to for summary judgment is granted as to the claim for deliberate indifference and any claim against Defendant Morrison; the motion is denied as to the claim for excessive force.

The Clerk of Court is directed to close the motion at Docket Number 78.

SO ORDERED.

Dated: May 15, 2017
New York, New York

J. PAUL OETKEN
United States District Judge

COPY MAILED TO *PRO SE* PARTY BY CHAMBERS